STAFFORD (UNITED STATES v.). See Case No. 16,372.

## Case No. 13,276.

STAFFORD v. WATSON.

[1 Biss. 437;[1] 2 Chi. Leg. News, 385.]

Circuit Court, N. D. Illinois. March, 1864.

DEMURRAGE — ABANDONMENT OF LIEN — ACTION AGAINST SHIPPERS.

The owner of a vessel, having abandoned his lien on the cargo for demurrage, cannot maintain an action for damages against the shippers, who were merely agents.

[Cited in Irzo v. Perkins, 10 Fed. 781; The William Marshall, 29 Fed. 330.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Appeal from decree of the district court, dismissing the suit. [Case unreported.]

In admiralty.

DAVIS, Circuit Justice. This is a suit, in personam, brought to recover damages, in the nature of demurrage, on account of the alleged detention of the brig Banner, owned by libellant, at Port Colborne. The cargo of the brig was corn, which was shipped on the 1st of May, 1863, at Chicago, by the respondents, as agents and forwarders, and consigned to H. Stearns, Montreal, in care of the Welland Railway Company, at Port Colborne, and was to be delivered at Port Colborne at the agreed rate of seven and a half cents per bushel. Outside of the terms of the bill of lading, there is proof that the respondents had no interest whatever in the corn, having purchased it for the consignee for a small commission. The brig arrived at Port Colborne in due course of navigation, and was detained there some eleven days, because the railway company could not receive the cargo. The vessel, on her arrival at her place of destination, could have been unloaded in twenty-four hours if the usual and proper facilities had been furnished, and when the master ascertained that he would be detained unreasonably, he telegraphed the fact to the libellant, who called on the respondents, and wished them to consent that the destination of the brig should be changed to Buffalo, or some other port where she could be unloaded with dispatch. They replied that they had no power to authorize such a change; that they had purchased the grain for their correspondent in Montreal, and had no interest in it; but were, nevertheless, willing to write to Montreal for instructions. It does not appear in proof that such a correspondence was opened, or that the libellant wished it done.

The vessel, after a detention of over eleven days, voluntarily delivered her cargo, getting pay for freight, but not for demurrage. Time is often of great importance in commercial transactions, and, during the season of navigation, the owner of a vessel suffers damage for every day that she is unreasonably detained. The owner of the cargo is bound to furnish all reasonable facilities for unloading, when the port of delivery is reached, and, for a non-performance of this obligation, the injured party has his remedy under the name of demurrage. If demurrage was due at all there was a lien on the property, and the master could well have refused to deliver it without payment for his detention. But this lien, if one existed, was abandoned. No attempt has been made to fasten liability on the owner, but it is sought in this action to charge the respondents in person. This cannot be done. The bill of lading disclosed that the shippers were agents, and had no concern with the property. The fair interpretation of the contract is, that the owner was to be held responsible for all defaults, and not the shipper.

If the owner was a foreigner, yet the ves-

sel had the remedy in its own hands. To hold that an agent who buys produce and ships it for another, having no concern with it afterwards, is responsible for the damages growing out of a failure of the owner to cause delivery within a reasonable time, without an express stipulation, would be effectually to end all purchases on commission.

With such a liability hanging over him, no one, in view of the limited compensation received, would engage in the business. There is always more or less detention at Port Colborne, and it is very easy for carriers, if they wish to contract for the personal liability of the shippers, beyond the lien on the cargo, to provide for it by express stipulation in the bill of lading.

In this case the carrier not only had a lien on the property for his freight, but for the delay in procuring a delivery of the property; and, having voluntarily chosen to abandon this lien, he cannot now seek to charge a party who had no interest in it, and no control over it.

The judgment below is affirmed.