## Case No. 4,531.

ESSELTYNE et al. v. ELMORE et al.

[7 Biss. 69; 3 N. Y. Wkly. Dig. 357; 9 Chi. Leg. News, 48.] [1]

Circuit Court, E. D. Wisconsin. Oct., 1875.

H. H. & G. C. Markham, for libellants.
Finches, Lynde & Miller, for respondents.

DRUMMOND, Circuit Judge. The libellants, in the fall of 1872, were the owners of the schooner Montana, and the defendants were coal merchants in Milwaukee. The libel is filed by the owners of the Montana, for the detention of the schooner by the defendants, in November, 1872. The schooner, laden with five hundred and sixty-seven tons of coal consigned to the defendants, arrived in Milwaukee from Erie, Penn., on Sunday, the 17th of November. The captain reported his arrival the next morning at the office of the defendants. The defendants were not then in their office, but an intimation was given by a clerk in their employ that the Montana was to go to the upper dock of the defendants—they having at that time three docks for the landing of coal and other merchandise. It was also then stated by the clerk to the captain that there was a vessel already unloading at the upper dock, and that another vessel was expected to proceed there in a short time, it already being in port, having arrived before the Montana.

The captain called again at the office of the defendants in the afternoon of the 18th of November, and was told by one of the defendants to take his vessel to the upper dock. He accordingly went there, and found

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 3 N. Y. Wkly. Dig. 357, contains only a condensed report.]

two vessels which were to be unloaded before the Montana. In consequence of this, and of the prevalence at the time of a horse disease called the epizootic (horses being much used in unloading coal from vessels), they did not begin to unload the Montana until Friday, the 22d, and the unloading was not completed until late Tuesday night of the 26th of November.

The vessel being consigned to the defendants, and they being the owners of the coal, under the conceded facts of the case, it became their duty to furnish, within a reasonable time after the arrival of the Montana was reported to them, a suitable place for the unloading of the vessel, and to complete it, also, within a reasonable time. The evidence shows—it being near the close of navigation—that a considerable number of vessels had arrived with cargoes consigned to the defendants about the same time. But it is manifest that the Montana could not be responsible for that circumstance. It was a separate and independent contract made between the schooner and the defendants for the transportation of coal from Erie to Milwaukee, and the duties of the defendants in unloading the Montana did not depend upon the fact that other vessels arrived at about the same time. That was a risk which the defendants themselves took when they agreed to freight the schooner from Erie to Milwaukee.

The weight of evidence is that the captain of the Montana was induced to believe by the conduct and declarations of the defendants, that the schooner Hattie Johnson, one of the vessels found at the upper dock, was to be discharged there before the Montana, and he must, therefore, for this reason, as well as for others appearing in the testimony, be excused for not reaching the dock before the Hattie Johnson. Now it must be apparent on this statement of the evidence, that it was not the fault of the Montana that she did not go to the upper dock on the morning of the 18th, because the captain did not then receive any direct instructions to go there, and there were no instructions left by the defendants in the office, he having called there several times, and when he first saw the defendants in the afternoon he was directed to go to the upper dock, and he says (there is no controversy about that) that he immediately proceeded there, and when he arrived he found two vessels, the Dore in the act of being unloaded, and the Hattie Johnson lying outside ready to take her place.

According to the rules of the port, and as of right, perhaps, they were entitled to be discharged before the Montana, there being no means to unload two vessels at the same time. It was immaterial to the defendants which of the schooners was discharged first, the Hattie Johnson or the Montana. There had to be a delay of the one or of the other.

It does not clearly appear that the principal delay in unloading arose from the prevalence of the horse disease at the time, but rather from the fact that adequate dockage was not seasonably furnished by the defendants. As I have said, the Montana was not responsible for the arrival of vessels consigned to the defendants about the same time; that was a risk which the defendants themselves took. It was, I·think, the duty of the defendants to furnish dockage to the Montana by Tuesday, the 19th of November, and even under the adverse circumstances of the time, the unloading should have been finished by Friday. In taking this view of the case I am not unmindful of the difficulty of unloading vessels at that time, in consequence of the prevalence of the horse disease, a circumstance which strictly speaking ought not, perhaps, to be considered at all, because it might well be questioned whether that was not one of the risks that the defendants took. In allowing until Friday to unload the vessel, I give all the time that was really taken by the defendants. They commenced the unloading of the Montana on Friday and they finished it Tuesday, that would be four working days. So that I have taken, I think, a favorable view of the rights of the defendants in stating that they were entitled until Friday to complete the unloading of the vessel. Then, all the time after that was taken unnecessarily. It was a detention for which the defendants are responsible to the owners of the vessel. That would constitute a delay of four days.

The unloading ought to have been completed Friday night at the very latest. It is a matter of some difficulty to determine the extent of the defendants' responsibility. It is to be borne in mind, however, that it was at a season of the year when the Montana was peculiarly entitled to dispatch; towards the latter part of November, when navigation was about to close, and when it was desirable that the schooner should have an opportunity to take freight for another port. But my experience is that all vessel-owners, in stating the value of the use of their vessels, are very apt to exaggerate. I have always felt inclined to make considerable deduction from the accounts which they give of that value.

So that, in view of this, the only allowance I shall make to the libellants for the delay, is four hundred dollars, one hundred dollars a day. I therefore shall allow a decree to pass against the defendants for that amount, together with interest from the first day of December, 1872.

The result of this is that the decree of the district court dismissing the libel [case unreported], must be reversed, and a decree for the above amount rendered, together with the costs in the court below, and in this court.