## THE WILLIAM MARSHALL.

### CAIN and others, Owners, etc., v. CHURCH and others.

*(District Court, D. Maryland. 1886.)*

1. DEMURRAGE—CONSIGNEE AND SHIPPER ONE PERSON—LIABILITY—ACTION IN PERSONAM.

The respondents, ice-dealers in Baltimore, purchased ice to be delivered free on board, in the Kennebec river, the sellers agreeing to procure the vessel, the respondents to pay the freight. *Held*, that the respondents, being both consignees and shippers, were liable in an action *in personam* for damages for unreasonable detention of the vessel upon arrival in Baltimore, before the discharging of the ice was commenced.

2. SAME—DISPATCHING TOO MANY VESSELS—PRINCIPAL AND AGENT.

The detention was caused by the accumulation of vessels in Baltimore consigned to respondents, and resulted from the sellers of the ice dispatching too many vessels at about the same date. *Held*, that the dispatching of so many vessels, even though contrary to respondents' instructions, was the act of persons acting in their behalf, and was no defense to libelants' demurrage for damages for detention.

*(Syllabus by the Court.)*

In Admiralty.

*Robert H. Smith*, for libelants.

*R. M. Venable*, for respondents.

MORRIS, J. This is a libel *in personam* to recover compensation for the detention of the schooner William Marshall in discharging a cargo of ice in the port of Baltimore. The schooner, with a cargo of 540 tons of ice, consigned to the respondents, Church, Lara & Co., sailed from the Kennebec river, August 12, 1886. She arrived in Baltimore early on the morning of the 20th, and reported to the consignees. On the 28th, discharging not having yet commenced, the master notified Church, Lara & Co. that from the 30th he would expect and require compensation for delay. On September 2d discharging was commenced, and was completed in two days. The libelants claim compensation for five days' detention from August 30th to September 3d.

There was no formal charter-party, and no agreement for demurrage; the only contract being that expressed in the bill of lading, which provides that the ice is to be discharged by the consignees, with the assistance of the crew. The legal implication, therefore, was that the ice was to be discharged in a reasonable time, having regard to all the circumstances proper to be considered. *Bacon v. Erie & Western Transp. Co.*, 3 Fed. Rep. 344. It is not disputed that the detention was far beyond the time actually required for discharging the ice. After a voyage consuming only eight days, the schooner lay in port for 13 days before she was taken to respondents' wharf, and the discharging which was then commenced was completed in two days.

Respondents put their defense upon two grounds: *First*, that they were merely consignees of the ice, and as such, there being no agreement for demurrage expressed in the bill of lading, there can be no implied liability on their part to pay for detention of the vessel which occurred before they began to receive the cargo; *second*, that an action against them as consignees, if maintainable at all, can only be sustained upon proof of culpable negligence on their part, and that they were not in fact guilty of negligence, because they were prevented from sooner receiving the ice, although their facilities were ample for the ordinary requirements of their business, by circumstances for which they are not responsible. The circumstances relied upon in the answer are that the respondents having, as was well known to libelants, but one wharf in the port of Baltimore at which ice could be discharged, there arrived an unusual number of vessels loaded with ice, consigned to them, just before the arrival of libelants' schooner, so that they were obliged to discharge four other vessels before libelants' schooner could have her turn; that the arrival of so many vessels about the same time was not through any fault of respondents, but was because the persons from whom they had purchased the ice had not complied with respondents' instructions with regard to the dates for dispatching the vessels.

The first ground of defense is not sustained by the proof. The respondents were not merely consignees, but were owners of the ice when it was put on board, and, in fact, the vessel was procured for their account. They had contracted for the ice with ice dealers in Maine, at a certain price per ton, free on board in the Kennebec river; the vendors agreeing to procure the vessel, and deliver the ice on board, from time to time during the season, as respondents might direct, the respondents to pay the freight. The bill of lading states that the ice is shipped for account and at the risk of the respondents. Under an ordinary bill of lading there is an implied agreement by the *shipper* that the goods shall be received within reasonable time after tender at the port of destination, and in admiralty there is a lien given upon the cargo for damages caused the ship by unreasonable delay in receiving them. *The Hyperion*, 2 Low. 93; S. C., on appeal, 1 Holmes, 290; *Fulton* v. *Blake*, 5 Biss. 371; *Hawgood* v. *Tons of Coal*, 21 Fed. Rep. 681. The shipper is a party to the contract of affreightment, and is accountable for any obligation implied by it. *Bacon* v. *Erie & Western Transp. Co.*, 3 Fed. Rep. 345; *Sprague* v. *West*, 1 Abb. Adm. 548. The goods being subject to a lien for the damages resulting from detention of the vessel, and having been the property of the consignee from the inception of the voyage, if he receives them with notice of the claim, there can be no good reason suggested why he should not be held personally answerable.

The responsibility cannot be placed upon the ice-dealers in Maine who put the cargo on board, for they might well defend themselves

by showing that the contract of affreightment was made on behalf of the consignees, and that they acted as agents, as indicated by the language of the bill of lading. *Stafford* v. *Watson*, 1 Biss. 437.

Assuming that respondents, being the owners and shippers as well as the consignees of the cargo, may be held to answer *in personam* for an unreasonable detention of the schooner, it remains to consider whether they were without fault in having such an accumulation of vessels arrive that they were prevented from sooner discharging her. In *Cross* v. *Beard*, 26 N. Y. 89, which was also a case of goods shipped by consignees' agents, it was held, at common law, that evidence going to show that an accidental break in a canal and a storm on one of the lakes had combined to cause a fleet of vessels to come into port together, which otherwise would have come singly, at intervals, was proper to go to the jury; and that from it they might find that the consignees had been without fault, under all the circumstances, in suffering such an accumulation of vessels as had caused the detention complained of. This rule has not been uniformly followed in admiralty, (*Esseltyne* v. *Elmore*, 7 Biss. 69;) but, assuming it to be applicable to this case, there is no proof whatever of any unexpected or unforeseen accidental occurrence, beyond the control of the respondents, which occasioned the accumulation of vessels which detained respondents' schooner. There was no storm, no interruption of navigation, no exceptional circumstances of any kind. The accumulation was occasioned by the fact that the parties from whom respondents had purchased ice, acting on respondents' behalf in shipping it, had dispatched too great a number of vessels about the same date. Respondents contend that this was contrary to their instructions, but it was the act of agents selected by themselves, and for which they are answerable to the libelants. It certainly was not a matter beyond ordinary human foresight, and is no answer to libelants' claim.

The counter-claim of the respondents for loss from melting of the ice, because of alleged neglect of the officers of the schooner to have her kept pumped free of water, is not sustained by the weight of evidence. No mention of this demand was made until after this libel was filed. There is direct testimony that the schooner was kept pumped free of water, and there is enough in the fact that the ice was in the vessel during the hot weather, from August 12th to September 2d, to account for the loss of weight.

The libelants are entitled to a decree for freight, and demurrage for five days.